IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| TERRY E. MALOY | : | NO. 12-cv-390 |
| Plaintiff, | : | |
| vs. | : | **AMENDED COMPLAINT** |
| COMMUNITY 1ST CREDIT UNION 457(f) RETENTION PLAN, and THE COMMUNITY 1ST CREDIT UNION BOARD OF DIRECTORS, as plan Administrators, | : | |
| | : | |
| Defendants. | | |

Plaintiff, Terry E. Maloy complains against Defendants as follows:

**PARTIES**

1. Terry E. Maloy ("Maloy") is, and at all times relevant hereto, a resident of Albia, Iowa.

2. Community 1st Credit Union 457(f) Retention Plan ("Plan") is a nonqualified deferred compensation "top hat" plan subject to cliff vesting as defined by the Employee Retirement Income Security Act of 1974 ("ERISA") which provided benefits for Maloy based upon his employment as the CEO and President of Community 1st Credit Union. 29 U.S.C. § 502(a) and 29 U.S.C. § 1051(2). The Plan is administered by the same individuals serving as the Community 1st Credit Union Board of Directors including David Boyer, John Mayberry, Floyd Brown, Jason Eubanks, Mary Beth Delaney, Jim Fleener, Rex Stewart, Greg Wetterich and Scott Van

1

Engelenhoven (hereinafter "Directors") at the time of termination. All all times relevant hereto, the Plan and Directors were engaged in business within the Southern District of Iowa.

## JURISDICTION

3. This Court has jurisdiction over this Complaint pursuant to 29 U.S.C. §1331 and 29 U.S.C. §1132(e) as the policy under which benefits are payable is part of an employee welfare benefit plan governed by ERISA.

4. The ERISA regulations provide that a claimant has the right to bring a civil action under § 502(a) following an adverse decision on an appeal from a denial of disability benefits. On September 30, 2011, Maloy submitted a claim for benefits. On December 1, 2011, the Directors denied his claim for benefits. On December 14, 2011, Maloy appealed the Directors' denial of his claim for benefits. On April 11, 2012, the Directors' denial of Maloy's claim for benefits was upheld on review. Therefore, this matter is ripe for judicial review.

## VENUE

5. Venue is appropriate in this district pursuant to 29 U.S.C. §1391 because one or more of the defendants reside in this district and because a substantial part of the events giving rise to this claim occurred within this district.

## NATURE OF THE ACTION

6. This is a claim seeking an award to Maloy of benefits pursuant to a 457(f) Retention Plan provided to Maloy and contemplating his employment through January, 2020. A true and correct copy of the 457(f) Retention Plan is attached to this Amended

Complaint as Exhibit "A" and incorporated herein. This action, seeking the recovery of benefits, is brought pursuant to § 502(1)(B) of ERISA (29 U.S.C. § 1132 (a)(1)(B)).

## STATEMENT OF FACTS

7. Community 1st Credit Union is a Not-For-Profit financial cooperative with its primary place of business in Ottumwa, Wapello County, Iowa.

8. The Credit Union extended an offer of employment to Maloy on October 4, 2004 for the position of Vice President, Strategic Planning. Maloy accepted said offer of employment and began his duties on November 8, 2004.

9. On or about June 28, 2006 Maloy accepted a promotion to the position of President and Chief Executive Officer. Maloy began his duties on July 1, 2006 and reported directly to the Directors.

10. On or about June, 2010, Maloy was offered and accepted a 457(f) Retention Plan from Community 1st Credit Union with an effective date of April 1, 2010.

11. Under the Plan, Maloy was entitled to payment of a retention bonus of $1,500,000.00 by remaining employed with the Credit Union through January 1, 2020. In the event of an involuntary separation from service for cause, the plan provided for a forfeit of all rights to receive any retention bonus. The Plan defined "cause" as: "any of the following that results in an adverse effect on the Credit Union: (i) the commission of a felony or gross misdemeanor involving fraud or dishonesty; (ii) the willful violation of any law, rule or regulation (other than a traffic violation or similar offense); (iii) an

intention failure to perform stated duties; or (iv) a breach of fiduciary duty involving personal profit." Exhibit A, p. 2, ¶ 2.2.

12. Maloy was terminated from his position by the Directors, who are also the Plan Administrators, on July 8, 2011 pursuant to a letter of termination from the Board Chairman dated July 12, 2011. The letter failed to identify any reason or cause for Maloy's termination.

13. On or about September 30, 2011, pursuant to Article 5 of the Plan, Maloy initiated a claim by submitting directly to the Credit Union a written claim for benefits. A true and correct copy of Maloy's September 30, 2011 claim for benefits under the 457(f) Retention Plan is attached to this Amended Complaint as Exhibit "B" and incorporated herein.

14. On or about December 1, 2011, Maloy received notification from the Directors that his request for benefits was denied in full. A true and correct copy of the December 1, 2011 denial is attached to this Amended Complaint as Exhibit "C" and incorporated herein. The basis for the plan denial included the following language: "The following evidence indicates a violation of this [policy 1.4 Harassment and Non-Discrimination Policy] Policy:

- Seven-page letter from Anne Hagen delivered to Jason Eubanks, some allegations of which were corroborated by third parties and Mr. Maloy's conduct.

- Anne Hagen's five week paid administrative leave, contrary to company policy.
- Emails between Anne Hagen and Mr. Maloy.
- Mr. Maloy placing his hands on Mary Beth Delaney's shoulders pulling her closer after an executive board meeting.
- Employees witnessing Mr. Maloy giving shoulder rubs, and hugs.
- Building committee noticing Mr. Maloy touching employees and instructing him not to do so.

Mr. Maloy's job description (copy attached) states his duties. The following list describes his failure to perform these duties, constituting "cause" under Plan Section 2.2(iii).

- He did not ensure the financial stability of the Credit Union by placing it at risk of legal claims.
- He failed to "insure that the Credit Union's policies are uniformly understood and properly interpreted and administered by subordinates."
- His actions did not place him in a position to "resolve any conflicts arising between operating groups, staff units and other elements under immediate supervision."
- His actions did not respresent the Credit Union appropriately."

15. Maloy sought review of the denial and supported his claim for benefits by providing a written response, accompanied with supporting documentation, on December 14,

2011. A true and correct copy of the December 14, 2011 Request for Review and supporting documents is attached to this Amended Complaint as Exhibit "D" and incorporated herein

16. As a direct result of the Directors serving in their capacity as direct supervisor for Mr. Maloy and as Plan Administrators, they were privy to information which is directly contrary to the information utilized in the plan denial. Specifically,

   a. Members of the Directors testified that the basis for their belief in finding Ms. Hagen's sexual harassment complaint credible was simply the result of the detail in the complaint. It was not founded on the corroboration of any facts.

   b. Vice-President of Human Resources Valerie Sample testified at the unemployment hearing for Mr. Maloy that Mr. Maloy did <u>not</u> approve any paid administrative leave for Ms. Hagen. She further testified in her deposition that the Directors were aware Maloy did not grant the paid administrative leave.

   c. Members of the Directors testified in their depositions that Mr. Maloy has <u>never</u> received any notification of any complaints made against him, whether sexual or harassing in nature or not. This includes the allegation specified by the Directors concerning Mary Beth Delaney in the plan denial, but which was not considered as basis for Maloy's termination. There has never been any type of complaint made by Ms. Delaney, and therefore, the information relied

      upon is not credible or proven in nature, nor was any investigation into the accuracy of the allegation undertaken by the Directors.

    d. There are various emails between Mr. Maloy and Ms. Hagen which the Directors testified caused them to doubt the credibility of Ms. Hagen. Specifically, there are four emails which are contrary to the facts included in Ms. Hagen's complaint. The Directors failed to acknowledge or consider these e-mails as they were detrimental to their position and cast considerable doubt upon Ms. Hagen's claims.

    e. Members of the Directors testified they interviewed Credit Union employees and ultimately based their decision to deny Maloy's claim, in part, on the witness statements. However, the Directors were aware of material misstatements and discrepancies between the minutes of the interviews and what the witnesses testify they said.

17. On or about April 11, 2012, Maloy received notification from the Directors that his review request was denied in full. A true and correct copy of the April 11, 2012 denial of Mr. Maloy's review request is attached to this Amended Complaint as Exhibit "E" and incorporated herein. The basis for the denial review included the following: "The Board's denial is due to findings that Mr. Maloy committed Cause under subsections (ii) and (iii) of the definition of cause.

<u>Violation of Law, Rule, Regulation</u>. With regard to subsection (ii), the Credit Union's Harassment and Non-Discrimination Policy (the "Policy") not only reflects

the underlying state and federal anti-discrimination laws, but is itself a Credit Union "rule or regulation." Consequently, violating the Policy is a violation of "law, rule or regulation."

An act is willful when undertaken with knowledge that the act is prohibited.

Based on the following evidence, the Board finds that Mr. Maloy violated the Policy and that the violation was willful:

1. Mr. Maloy having received sexual harassment training, understanding what constitutes sexual harassment, and having responsibility to oversee the Credit Union's implementation of the Policy.

2. Anne Hagen's July 6, 2011 sexual harassment complaint and in particular the unflattering and embarrassing detail contained in the complaint.

3. The content of emails between Ms. Hagen and Mr. Maloy.

4. Mr. Maloy's lack of credibility in responding to questions during his March 7, 2012 deposition and explanations of emails.

5. Ms. Hagen's credibility in responding to questions about her sexual harassment complaint and explanations of her inconsistent conduct.

6. Mr. Maloy's call to Ms. Hagen at 10:46 p.m. on June 15, 2011.

7. Ms. Hagen's early return from the Gen Y Conference.

8. Mr. Maloy's uncharacteristic handling of Ms. Hagen's request for five week's paid administrative leave.

9. Admonitions to Mr. Maloy by the Faciltiies Committee and Valerie Samples hugging people in the workplace.

10. Jerri Gatlin's statement that she received an unwanted shoulder rub from Mr. Maloy and that she would generally try to avoid Mr. Maloy to avoid him hugging and touching her.

11. Mr. Maloy placing his hands on Mary Beth Delaney's shoulders pulling her closer to him after an executive board meeting.

12. July 4, 2011 photo of Mr. Maloy he stored on his work phone.

<u>Failure to Perform Stated Duties</u>.  With regard to subsection (iii) of the Cause definition (intentional failure to perform stated duties), Mr. Maloy's job description describes his role as President and Chief Executive Officer, in part, as directing "the overall operations of the Credit Union with the objective of ensuring financial stability commensurate with the best interests of the members."

The job description includes the following duties:

- Resolve any conflicts arising between operating groups, staff units and other elements under immediate supervision.
- Insure that the Credit Union's policies are uniformly understood and properly interpreted and administered by subordinates.
- Represent the Credit Union within the community.

> Based on the evidence listed above, the Board's finding that Mr. Maloy willfully violated the Policy, the Board finds that Mr. Maloy intentionally failed to perform the noted stated duties."

18. As a direct result of the Directors serving in their capacity as direct supervisor for Mr. Maloy and as Plan Administrators, they were privy to information which is directly contrary to the information utilized in the plan denial which includes information set forth in paragraph 16, as well as the following:

    a. The Directors refused to interview Maloy, despite his repeated requests, until after litigation had commenced on his state claim for wrongful termination and various facts which are detrimental to the Plan Administrators came to light during deposition testimony. The Directors further failed to interview the author of the sexual harassment complaint, despite their knowledge of material and substantial discrepancies in the letter and information they received during the discovery process of the state claim.

    b. The Directors failed to acknowledge that, although they considered a call made from Maloy to Hagen in their decision to deny benefits, they did not acknowledge or consider the discrepancies in Hagen's rendition of the phone calls and the actual phone records.

    c. The Directors failed to acknowledge that the July 4, 2011 photo was not sent to the author of the sexual harassment complaint, but rather, a member of the

      executive team who testified it was sent for a legitimate purpose and was not sexual in nature.

   d. The Directors failed to acknowledge that although they base their denial, in part, on a violation of his stated job duties, Maloy never received any job description for his duties as President and CEO.

## CAUSE OF ACTION

19. Maloy reasserts paragraphs 1-18 and incorporates them as if set forth in full herein.

20. Defendants' failure to pay Maloy benefits due to him under the Community 1st Credit Union 457(f) Retention Plan violates the terms of the Plan and of ERISA § 502(a), as well as represents a conflict of interest in that the Directors voting on Maloy's termination from employment are the same people who serve as the Plan's administrators.

21. As a direct and proximate result thereof, based on the evidence submitted to the Directors establishing that Maloy was not terminated for "cause" under the definition of the Plan, Maloy is entitled to benefits retroactive to July 8, 2011.

WHEREFORE, Maloy prays for the following relief:

   A. That the Court enter judgment in Plaintiff's favor and against the Defendants and that the Court order the Defendant to pay Maloy benefits retroactive to July 8, 2011;

B. That the Court order the Defendants to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

C. That the Court award attorney's fees pursuant to 29 U.S.C. § 1132 (g); and

D. That the Plaintiff recover any and all relief to which he may be entitled, as well as the costs of suit.

Respectfully submitted,

<u>Matthew D. Jacobson</u>
Matthew D. Jacobson     AT0010026
Whitfield & Eddy, PLC
317 6th Avenue, Suite 1200
Des Moines, Iowa  50309
Phone:  515.246.5531
Fax: 515.288.1474
Email: jacobson@whitfieldlaw.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on October 3, 2012 I electronically filed the foregoing with the Clerk of Court using the ECF system and served a copy of the foregoing by electronic mail and by U.S. Mail upon:


Diane M. Reinsch
**Lane & Waterman, LLP**
220 N. Main Street
Suite 600
Davenport, Iowa 52801
Telephone:  563.333.6644
Facsimile:  563.324.1616
Email:  dreinsch@L-WLaw.com